# City of Newport v. Rawlings et al.

Nov. 7, 1941.

L. J. Crawford, Carl H. Ebert and Lorimer W. Scott for appellant.

Barbour & Bassman, Reuscher & Reuscher, Charlton B. Thompson, James A. Culbertson and Charles P. Taft for appellees.

OPINION OF THE COURT BY JUDGE FULTON—Affirming in part and reversing in part.

This appeal is from a judgment dismissing the petition of the City of Newport filed against the appellees after a demurrer was sustained. The consideration of the appeal is somewhat involved owing to the fact that originally the demurrer to the petition was overruled, followed by the filing of an answer, and the arguments in the brief are devoted in part to the question whether or not the answer presented a defense and appellees in their argument that the petition failed to state a cause of action seek, in a manner, to add vigor to their argument by reference to facts contained in the answer. In determining whether or not a cause of action was stated in the petition we may refer, of course, only to the petition, the allegations of which are in substance as follows.

The City of Newport, a municipality of the second class, has been operated under the city manager form of government since 1932. In January, 1936, the appellee, John Thomas Rawlings, was appointed city manager and executed bond in the sum of $10,000 with the appellee, Globe Indemnity Company, as surety. Upon being appointed city manager Rawlings appointed his co-appellees, Myles A. McIntyre and Richard M. Hagen, as city treasurer and auditor respectively. The appellees, American Surety Company of New York and Fidelity & Casualty Company of New York, furnished the bond of McIntyre and Hagen respectively.

In March, 1937, the board of commissioners of Newport levied certain taxes which were collected and paid into the treasury. Of the taxes thus collected there was a failure to pay into the sinking fund $30,090.15 levied and apportioned therefor. There was also a failure to pay to the board of education, for which the city levies and collects taxes, the sum of $12,211.87 levied and collected for that purpose and a further failure to pay to the police and firemen's pension fund $2,496.56, and to the teachers' annuity fund $4,341.76. Thus the aggregate gross deficit in the four funds was $58,766.07 but

there was available for liquidation of this deficit, as of December 31, 1937, $13,192.20 in all funds and depositories of the city leaving a net aggregate deficit of $45,573.87 for which judgment was sought against the appellees.

The petition specifically alleged a failure of the city manager, treasurer and auditor to preserve and faithfully hold for the funds entitled thereto the sums above mentioned of the taxes levied and apportioned therefor and that they wilfully and unlawfully expended and permitted the expenditure of said sums "for purposes other than for which said taxes were levied, apportioned and collected." Construing the allegations of the petition most strongly against the pleader, in accordance with established rules, the allegation that the officers permitted the expenditure of money "for purposes other than for which said taxes were levied" is, in effect, one that the diverted money was expended for other *governmental* purposes. Thus the principal question before us is whether the petition was fatally defective by reason of the absence of allegation that the city, during the fiscal year, expended money in the payment of invalid or illegal claims, to which illegal expenditures might be attributed the use of the diverted funds. Appellees insist that there is no pleading of damage incurred, absent such an allegation, and that mere allegation of a violation of a right is not sufficient—that there must be a juncture of wrong and damage to give rise to a cause of action. This general rule urged by them is elementary and fundamental and the question must be considered in the light thereof.

The arguments in the brief are largely directed towards the proper deductions to be drawn from the cases of Duncan v. Combs, 131 Ky. 330, 115 S. W. 22 and City of Newport v. McLane, 256 Ky. 803, 77 S. W. (2d) 27, particularly the last paragraph of the latter opinion, and the controlling force of those opinions.

In Duncan v. Combs the petition alleged that the Mayor, Auditor and members of the council of Lexington failed to apply money collected under a taxing levy for the creation of a sinking fund for the redemption of certain city bonds to the redemption of the bonds but appropriated it to other uses in the conduct of the city's affairs. The court said there was no doubt that the plaintiff was proceeding under Section 3175, Kentucky Statutes, which imposes personal liability on members of

a council voting for the expenditure of money collected under an ordinance void because of a failure to specify the purposes for which the tax was levied. The holding was that the statute relied on imposed no liability upon officers applying taxes collected under a *valid* ordinance to a governmental purpose other than that for which the tax was levied. It was assumed that the allegations of the petition were sufficient to show that the money was expended for *valid* governmental purposes and the manner of presentation of the case was such that the attention of the court was not called to the real question argued here, namely, on whom shall fall the burden of proof in these circumstances as to the legality of the governmental purposes for which the diverted funds were expended.

In City of Newport v. McLane, supra, the board of commissioners by resolution transferred money from the sinking fund to various deficient sub funds of the general fund with a provision for reimbursement of the sinking fund. It was held that the petition stated a cause of action against the commissioners but the last paragraph of the opinion held, in substance, that liability extended only to the extent of loss actually incurred by the city and that the commissioners might absolve themselves from liability to the extent that they could show by clear and convincing evidence that the amount diverted from the sinking fund, when added to the other debts and liabilities paid out of the taxes levied for that year, did not exceed in the aggregate the legitimate limit the city could have expended during the year. The opinion was largely directed to a discussion of the difference between legislative and administrative functions of the commission and it was held that in diverting the money from the sinking fund the commissioners were acting in an administrative capacity rather than a legislative capacity and were therefore liable. The case of Duncan v. Combs, supra, was distinguished by saying that the facts charged in that case involved the acts of the defendants as a legislative body. It hardly seems that the distinction is sound since, clearly, the officers of the city in diverting funds collected for one purpose to another were acting in an administrative capacity—in short, the holding and expenditure of tax funds after collection is not a legislative but an administrative function as was pointed out in the McLane case itself.

However, though we have given due consideration to the argument of appellees that it is essential to the statement of a cause of action that both a violation of a right and resulting damage must be alleged, we have reached the conclusion that the correct decision was arrived at in the McLane case although the attempted distinction between it and the Duncan case may have been dubious. It was the duty of the Treasurer of the City of Newport to transfer out of the taxes collected by him the part thereof apportioned to the various funds and of the City Manager, as financial agent of the board of commissioners, to see that this was done. When money, which should have been allocated to various funds for which it was levied and apportioned, was used for other purposes there was a clear violation of Section 180 of the Constitution prohibiting a tax levied and collected for one purpose from being diverted to another purpose. Under the rule announced in the McLane case if it is established that the money diverted was used in the payment of *valid* obligations of the city then there is no liability on the part of those responsible for the diversion. If, however, money levied for one purpose is expended in paying invalid claims against the city those responsible for such unlawful diversion and illegal payments are, of course, liable therefor. Owensboro Waterworks Co. et al. v. City of Owensboro et al., 29 Ky. Law Rep. 1118, 96 S. W. 867.

It is argued, however, that the presumption is that the officers performed their duty and that the claims against the city for which the diverted money was expended would be presumed to be valid claims. Ordinarily this might be true but when a clear violation of duty on the part of the persons charged with the duty of paying over to these funds taxes collected therefor was alleged, this was a sufficient allegation of a prima facie case of liability such as to impose on those responsible for the diversion the duty of establishing that the diverted funds were lawfully expended. A presumption that the officers did their duty and expended the diverted funds in the payment of valid, and not invalid, claims should not be permitted to operate in favor of officers clearly guilty of ignoring a constitutional mandate to overcome the prima facie liability arising by reason of their unauthorized diversion. A diversion in violation of law being established, the burden should be on the officers guilty thereof to establish that no damage re-

sulted to the city by showing that the diverted funds were expended in payment of valid obligations against the city. This question was not squarely presented or considered in the Duncan case and the court, without discussion of this question of pleading, merely declared as a general rule that officials unlawfully diverting funds levied for one governmental purpose to the payment of other valid governmental obligations were not personally liable. We are of the opinion that the correct conclusion was reached in the McLane case and that the petition here stated a cause of action against the City Manager and Treasurer upon whom the duty devolves by law to see that the tax funds are properly allocated and legally expended. It may be added that this same question now argued so earnestly by appellees was vigorously presented to the court in the McLane case by petition for rehearing and resolved against them.

A different question is presented as to the appellee, Richard M. Hagen, the Auditor, and his surety. An examination of the ordinances filed with the petition prescribing certain duties of the Auditor contain nothing that in our opinion impose liability on him. His duties are merely clerical and he occupies a status closely analogous to that of a bookkeeper for the city. He has no authority to receive and disburse money, that function being performed by the Treasurer, nor is he under the mandatory duty of seeing that taxes collected are allocated to the proper funds. The petition fails to allege a clear violation of duty on his part as it did in the case of the City Manager and Treasurer.

It is insisted by the appellees that no cause of action is stated against the City Manager and his surety in any event. The argument is that as the City Manager has no duty imposed upon him to receive or collect or disburse money and as the statute does not make him accountable for monies received for the account of the city no liability can be imposed upon him by reason of any unlawful diversion and illegal disbursement of the city's funds. We are not prepared to agree with this argument in view of the wide powers conferred and duties imposed on the City Manager under the Statutes. By the provisions of Sections 3235dd-32 to 3235dd-38 the City Manager is made the executive agent of the mayor and board of commissioners in the management of the city's affairs and is vested with very wide powers as is pointed out

in City of Lexington v. Thompson, 250 Ky. 96, 61 S. W. (2d) 1092, 1095 and Rawlings v. City of Newport, 275 Ky. 183, 121 S. W. (2d) 10. In the latter case it is pointed· out that the City Manager served as the principal administrative and financial officer for the board. Under Section 3235dd-34 he is responsible to the board of commissioners for the proper administration of all affairs of the city and under Section 3235dd-37 he is required to prepare and submit to the board an annual budget for the ensuing fiscal year and by Section 3235dd-38 he makes recommendation in writing to the board of commissioners as to appropriations of amounts sufficient to cover the expenses of the various departments, it being provided by this section that no liability shall be incurred by any officer or employee of the city except in accordance with the provision of annual appropriation ordinance or under legally authorized continuing contracts and loans. Under these broad powers conferred and duties imposed upon the City Manager it seems clear that he was under the duty of seeing to the proper allocation of the tax monies to the various funds and a legal disbursement thereof. It is obviously his duty to advise the board of commissioners concerning these matters and as the petition alleged that he permitted the diversion and unauthorized expenditure a violation of duty on his part is plainly alleged. As the condition of his bond was that he would faithfully perform the duties imposed upon him by law his surety is also responsible for any damage resulting from a failure so to do.

It is also insisted that no cause of action is stated against the Treasurer by reason of the absence of allegation that he acted without the approval of the board. The argument here is that the Treasurer has no legal authority to expend money until the expenditure is approved by the board of commissioners and that the presumption is that he acted with the approval of the board. We find, however, that it is clearly the Treasurer's duty to collect the taxes for the sinking fund and deposit them as a separate account to the credit of the sinking fund. See Walters, Treasurer, v. Dorian et al., 138 Ky. 735, 129 S. W. 92, 130 S. W. 980, construing Sections 3132 and 3190 to 3192, Kentucky Statutes. It is further the Treasurer's duty under Kentucky Statutes, Section 3219, to set apart to and pass over to the common school fund all sums of money collected by him for school purposes, inclusive of the teachers' annuity fund monies. Also,

by Section 3142b-4, Kentucky Statutes, it was his duty to set apart to the police and firemen's pension fund money collected for that purpose. In failing to pay over the monies in his hands to the funds entitled thereto he is clearly guilty of a violation of duty imposed on him by statute and this failure of duty is a breach of his bond conditioned upon the faithful performance of his duty such as to render his surety liable.

We find much argument in the respective briefs with reference to a motion to require the plaintiff to elect as to which of the defendants it would prosecute the cause of action asserted in the petition, this motion being based on the theory that the cause of action was not a joint one. There is also much argument as to whether the answer appearing in the record presented a valid defense, especially whether or not a certain action filed by the city constituted an estoppel to assert the present claim. However, since a demurrer was sustained to the petition we are in no position to consider the matters thus argued. When the demurrer was sustained everything beyond the petition was carried out of the record in so far as our right to consider it. In the state of the record we have before us no ruling of the trial court on the motion to elect and on the demurrer to the answer and the trial court should be given the opportunity to rule thereon before any decision with reference thereto is enunciated by this court. We therefore refrain from passing on any question except as to the action of the trial court in sustaining the demurrer and dismissing the petition.

The judgment is affirmed as to appellees Richard M. Hagen and his surety, the Fidelity and Casualty Co. of New York, and is reversed as to the other appellees for further proceedings consistent with this opinion.

The whole Court sitting.